UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DIANE R. OLSON,

            Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

            Defendant.

Case No. C10-5840-MJP-BAT

**REPORT AND RECOMMENDATION**

Diane R. Olson seeks review of the denial of her Disability Insurance Benefits applications. She contends the ALJ erroneously evaluated her testimony, and the testimony of her husband and employer. Dkt. 14. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Diane Olson is currently 39 years old, has a 10th grade education, and has worked as a casino, convenience store, and fast food cashier.[1] On August 20, 2007, she applied for benefits, alleging disability as of January 1, 2006. Tr. 109. Her application was denied initially and on reconsideration. Tr. 61. After conducting a hearing on January 20, 2010, the ALJ found Ms.

---

[1] Tr. 26, 109, 213.

REPORT AND RECOMMENDATION - 1

Olson not disabled. Tr. 5. As the Appeals Council denied Ms. Olson's request for review, the ALJ's decision is the commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

> **Step one:** Ms. Olson had not worked since January 1, 2006.
>
> **Step two:** Ms. Olson had the following severe impairments: degenerative disc disease in the spine, chronic pain, and obesity.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]
>
> **Residual Functional Capacity:** Ms. Olson can perform light work. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to vibrations.
>
> **Step four:** Ms. Olson can perform her past work and is not disabled.

Tr. 10-16.

## DISCUSSION

**A.     The ALJ's evaluation of Ms. Olson's credibility**

The ALJ discounted Ms. Olson's testimony on the grounds it was inconsistent with (1) the objective medical evidence; (2) the course of medical treatment; (3) Ms. Olson's daily activities; and (4) Ms. Olson's work activity. Tr. 14-15. The ALJ did not find Ms. Olson was malingering. T hus, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient;

---

[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

   **1. Objective medical evidence**

The ALJ found Ms. Olson's degenerative disc disease and chronic pain were severe impairments. Tr. 10. The ALJ reviewed the medical evidence regarding these impairments and concluded Ms. Olson's testimony was not consistent with the medical evidence. Tr. 13. Ms. Olson contends the ALJ erred in two ways. Dkt. 14 at 12. First, she argues the problem with the ALJ's analysis of the medical evidence is that "the ALJ failed to acknowledge that Plaintiff had fibromyalgia" and thus did not consider pain arising from this condition in rejecting Ms. Olson's testimony. *Id.* at 12-13. This argument is not supported by the record. The ALJ noted "Dr. Probst assessed fibromyalgia and diffuse spondylosis" and "formulated a treatment plain which consisted of muscle relaxants, pain relievers and educational classes." Tr. 14. Hence, the Court cannot say that the ALJ failed to acknowledge Ms. Olson had fibromyalgia.

More importantly, Ms. Olson did not testify that pain from fibromyalgia limited her ability to work. Instead, she testified the reason she could not work was due to back and neck pain. Tr. 29-30. Hence even if the ALJ erred in discussing the impact, if any, Fibromyalgia had on Ms. Olson's credibility or ability to work, that error was harmless because Ms. Olson never testified that she could not work due to fibromyalgia. Accordingly, the Court concludes the ALJ did not err in rejecting Ms. Olsen's testimony on the grounds that it was inconsistent with the objective medical evidence.

Second, Ms. Olson argues the ALJ erred by rejecting her testimony on the grounds it was not supported by objective medical evidence. Dkt. 14 at 13-14. This argument is based on the principle that an ALJ cannot rely solely on the lack of objective medical evidence to discount a

1   claimant's subjective complaints. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But,
2   this is not what the ALJ did in this case. The ALJ did not reject Ms. Olson's testimony simply
3   because there was no objective medical evidence to support her claims. Rather, the ALJ detailed
4   the medical evidence regarding the severe impairments that caused Ms. Olson back and neck
5   pain; and concluded the medical evidence was inconsistent with Ms. Olson's testimony about
6   that pain. Tr. 13. The ALJ was entitled to consider "ordinary techniques of credibility
7   evaluation" including inconsistencies between Ms. Olson's testimony and the opinions of
8   medical sources and other evidence in the medical record concerning the severity and the effect
9   of the symptoms of which Ms. Olson complained. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th
10  Cir. 1996). Accordingly, the Court concludes the ALJ did not err.

**2. Course of medical treatment**

12  The ALJ also rejected Ms. Olson's testimony on the grounds that her "allegations are not
13  supported by the treatment she has been receiving from her doctors." Tr. 14. The parties differ
14  over what the ALJ's statement means. Ms. Olson interprets the statement to mean the "ALJ
15  found Plaintiff's routine or conservative treatment was inconsistent with disability." Dkt. 14 at
16  15. The Commissioner interprets the statement to mean the ALJ discounted Ms. Olson's
17  testimony because her impairments were effectively treated. Dkt. 18 at 10. The Court agrees
18  with Ms. Olson's interpretation. The ALJ's statement specifically referred to the treatment Ms.
19  Olson was **receiving** as the grounds to discount her testimony. On its face, this indicates that in
20  evaluating Ms. Olson's credibility, the ALJ was focusing on the type of treatment Ms. Olson was
21  receiving, not the efficacy of the treatment. To be sure, the ALJ did discuss how Ms. Olson's
22  treatment appeared to help with her symptoms. But the ALJ did not specifically state that he was
23  discounting Ms. Olson's testimony on this ground; the Court declines to jump to the conclusion

that the ALJ rejected Ms. Olson's testimony based on reasons not clearly stated in the ALJ's decision.

It is, of course, entirely proper for an ALJ to rely on the type of treatment a claimant has received in assessing the claimant's credibility. Specifically, evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue,* 481 F.3d 742, 751 (9th Cir. 2007).

Ms. Olson argues the ALJ erred because she "followed the recommendations of her doctors as to the appropriate course of treatment" and tried numerous prescribed medications, physical therapy, TENS machine therapy, steroid injections and nerve block. Dkt. 14 at 15. In essence, Ms. Olson argues her treatment was neither inappropriate nor "conservative." The Court agrees with Ms. Olson. This case does not involve a situation similar to that in *Parra* where the claimant was treated only with "over-the-counter pain medication. *See Parra v. Astrue,* 481 F.3d at 751. Nor does it involve a situation similar to that in *Meanel v. Apfel,* 172 F.3d 1111, 1114 (9th Cir. 1999) where the claimant failed "to request any serious treatment for [ ] supposedly excruciating pain." Rather as discussed above, Ms. Olson appears to have followed her treating doctor's orders and received significant treatment.

### 3. Ms. Olson's daily activities

The ALJ next found Ms. Olson's daily activities were inconsistent with her testimony about her limitations due to pain. Tr. 14. The ALJ noted Ms. Olson "is able to bathe and dress herself independently," that she "occasionally accompanies her husband on shopping trips," "visits her mother twice a month," and uses her cellular phone to access the internet." Tr. 14-15. An ALJ is permitted to consider daily living activities in his credibility analysis. Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding. *Fair v.*

*Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ's finding that Ms. Olson's daily activities are inconsistent with her testimony is not supported by substantial evidence. Ms. Olson's minimal daily activities hardly contradict her testimony. Instead, they appear consistent with her alleged limitations. Additionally, most of the activities are clearly not transferrable to the work setting. For instance, dressing oneself or occasionally accompanying a spouse on a shopping trip is not indicative of the ability to function in the work place. Ms. Olson should not be "penalized for attempting to lead normal lives in the face of their limitations" by accompanying her husband, visiting her mother a few times a month and using her cell phone. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Accordingly, the Court finds the ALJ erred in rejecting Ms. Olson's testimony based on her daily activities.

**4. Ms. Olson's work activity**.

Ms. Olson alleged a disability onset date of January 1, 2006. The ALJ found the fact Ms. Olson continued to work after her alleged disability date "weakens" her testimony about the severity of her symptoms. Ms. Olson contends the ALJ erred for two reasons. First, she argues that when she filed her application, the field office employee recommended an onset date of February 2, 2007, the date she reduced her work hours due to her impairments. Dkt. 14 at 22. She claims this "got lost in the shuffle" and "was not understood by the ALJ at the hearing level." *Id.* This argument is not persuasive. Ms. Olson, appeared with counsel at the hearing the ALJ conducted and did not inform the ALJ that she was changing her onset date from 2006 to 2007. The fact that she was advised to change her onset date when she filed her application but did not does not convince the Court the ALJ erred in considering the fact she worked past her

alleged onset date.

Second, in her Reply brief, Ms. Olson argues for the first time that her "work activity after her *alleged onset date of February 2, 2007* was not substantial gainful activity and is consistent with disability." Dkt. 21 at 7 (emphasis added). This argument is problematic for several reasons. For one, it assumes Ms. Olson has amended her alleged onset date from 2006 to 2007, something that is not entirely clear. Two, when Ms. Olson appeared before the ALJ, the record before the ALJ indicated that Ms. Olson's onset date was January 2006. Under these circumstances, the ALJ correctly found that Ms. Olson work from her onset date of January 2006 into 2007 "weakens" her testimony about the severity of her symptoms. And third, Ms. Olson's contention that an ALJ may not discount a claimant's testimony based on work activity that does not rise to the level of substantial gainful activity defies common sense and the law. Among the many things an ALJ may consider in evaluating a claimant's testimony is any inconsistency between the claimant's testimony and her work record. *Smolen v. Chater*, 80 F.3d at 1284. That is what the ALJ did in this case—Ms. Olson worked for at least a year after her alleged onset date and the ALJ found this weakened her testimony.

**5. Whether the ALJ's errors in assessing Ms. Olson's testimony were harmless**

Because two of the ALJ's reasons supporting his adverse credibility finding are invalid, the Court must determine whether the ALJ's reliance on such reasons was harmless error. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Under *Batson*, an error is harmless so long as there remains "substantial evidence supporting the ALJ's conclusions on . . . credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion." *Id*. at 1197. In other words, an error is harmless where the ALJ's remaining reasoning and ultimate credibility determination are adequately supported by

substantial evidence in the record. *Carmickle v. Commissioner of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Here, the ALJ's findings that Ms. Olson's testimony is inconsistent with the medical evidence and work history, are adequately supported by substantial evidence in the record; the Court thus concludes the ALJ's errors are harmless.

**B.     The ALJ's evaluations of Sam Olson's testimony**

Ms. Olson contends, and the Court agrees, that the ALJ erred in evaluating the testimony of her husband, Sam Olson. The ALJ noted that according to Mr. Olson, his wife "was able to work outside of the home and perform light housework," that she "is almost in constant pain" and had difficulty sleeping. Tr. 15. The ALJ found "Mr. Olson's statements are generally consistent with the claimant's alleged activities of daily living. However they are of limited value for arriving at a determination of the claimant's overall residual functional capacity." *Id.*

Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing do. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for disregarding lay witness testimony must be specific. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Here, the ALJ failed to provide any reasons to reject Mr. Olson's testimony. Instead, the ALJ simply stated, in a conclusory fashion, that Mr. Olson's statements are of limited value.

The Commissioner contends the ALJ properly rejected Mr. Olson's testimony under *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, (9th Cir. 2009). Dkt. 18 at 16. However, the facts here are distinguishable from *Valentine*. In *Valentine*, unlike this case, the ALJ expressly rejected the testimony of the lay witness and expressly stated he was doing so for the same reasons he rejected similar testimony of the claimant. *Id*. at 694. Here, the ALJ failed to

give any reasons for rejecting Mr. Olson's testimony.  The Commissioner also contends that the ALJ properly rejected Mr. Olson's testimony as inconsistent with the medical evidence.  The ALJ did not rely on this rationale to reject Mr. Olson's testimony.  As such, the Commissioner's argument is an improper post-hoc rationalization that this Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

**C.     The ALJ's evaluation of Ms. Olson's employer's statement**

Ms. Olson contends the ALJ erred by failing to consider a "work activity questionnaire" that her employer submitted.  Dkt. 14 at 20.  The Commissioner contends that any alleged error in the ALJ's failure to mention the employer's statement is harmless because Ms. Olson has not shown she is unable perform her past work. Dkt. 18 at 14-15.

As noted above, an ALJ should consider the testimony of lay witnesses.  Lay witness testimony regarding how an impairment affects a claimant's ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993).  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Id.* at 919.  Here, the ALJ clearly erred.  The ALJ gave no reasons to reject the employer's testimony and in fact failed to mention the existence of the testimony.

This error was not harmless.  An ALJ must assess a claimant's residual functional capacity based on all of the relevant evidence in the case record.  SSR 96-8p.  That did not occur here; the ALJ neither mentioned not discussed the testimony of Ms. Olson's employer in assessing Ms. Olson's residual functional capacity.  As a result, the ALJ's assessment omitted evidence from Ms. Olson's employer that indicated Ms. Olson was unable to complete all the usual duties required for her position; that she unable to complete her work duties without special

REPORT AND RECOMMENDATION - 9

assistance; that she needed fewer and easier duties and extra help; and that she was "50% or less of other employees' productivity." Tr. 108. Where an ALJ fails to give any reason, let alone a proper reason, for not considering relevant lay testimony, the testimony can be credited as a matter of law. *See Smolen*, 80 F.3d at 1289, 1292 (finding ALJ's reasons for rejecting lay testimony insufficient and thus crediting the testimony).

The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d at 1292). This occurs when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence. *Id*. at 1076-77. Here, the record is not fully developed and it is not clear that the ALJ would be required to find Ms. Olson disabled if he credited, as true, the testimony of her employer or husband. Under these circumstances, the Court concludes that the matter should be remanded for further administrative proceedings.

**CONCLUSION**

The ALJ erred in evaluating the testimony of Ms. Olson's husband and her employer. The Court therefore recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should reevaluate the testimony of Ms. Olson's husband and her employer and reassess steps four and five of the sequential evaluation process with the assistance of a vocational expert if deemed appropriate.

Any objections to this Recommendation must be filed and served upon all parties no later

REPORT AND RECOMMENDATION - 10

than **July 12, 2011.** If no objections are filed, the matter will be ready for the Court's consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 28th day of June, 2011.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge